Filed 7/3/23  In re E.G. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | B320085 (consolidated with B320123) (Los Angeles County Super. Ct. No. 21LJJP00222D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.G.,<br><br>        Defendant and Appellant. | |

| In re D.G. et al., Persons Coming Under the Juvenile Court Law. | B320123 (consolidated with B320085) (Los Angeles County Super. Ct. No. 21LJJP00237A–B) |
| --- | --- |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Stephanie Davis, Judge Pro Tempore. Affirmed.

Megan Turkat Schrin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

# I. INTRODUCTION

At the six-month review hearings in two related dependency cases, the juvenile court terminated jurisdiction and issued custody and visitation exit orders. On appeal from the exit orders, J.G. (father) contends that the court abused its discretion when it denied him: unmonitored visitation with his sons; joint custody of his sons; and monitored visitation with his daughter. We affirm.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. *Father's Children*

Father and his former wife, J.O., had two sons while together: D.G., born in 2006, and A.G., born in 2008 (collectively, the sons). They divorced in 2016. Father had "seventy percent physical custody over [his sons] and [J.O.] ha[d] visitation[ ] three weekends out of the month." Due to space limitations in father's home, his sons "predominantly stay[ed] with [their] paternal grandmother."

Following his separation from J.O., father began a relationship with L.C. (mother),[1] and in 2018, they had a daughter, E.G. At the time, mother had three older daughters from a prior relationship: Ja.F., age 12; Y.F., age 10; and Ju.F., age 8. In October 2020, mother and father separated.

---

[1] Neither J.O. nor mother is a party to this appeal.

B.    *Jurisdiction and Disposition*

On April 22, 2021, the Department filed a Welfare and Institutions Code section 300[2] petition on behalf of E.G. (E.G.'s case), alleging, as later amended and sustained by the juvenile court, that father's violent verbal and physical altercations with mother endangered E.G. and placed her at risk of serious physical harm; father's sexual abuse of Y.F., Ja.F., and Ju.F placed E.G. at risk of such abuse; father's abuse of alcohol and marijuana rendered him incapable of caring for E.G. and placed her at risk of serious physical harm; and father placed E.G. at risk of serious physical harm when he consumed alcohol while driving with E.G. as a passenger.

On April 29, 2021, the Department filed a separate section 300 petition on behalf of the sons (the sons' case), asserting that the sons were at serious risk of harm due to father's domestic abuse of mother, sexual abuse of Y.F., Ja.F., and Ju.F., and alcohol and marijuana abuse.  The petition included a count alleging that father's conduct in driving E.G. while consuming alcohol endangered the sons and placed them at risk of harm.  On May 4, 2021, the juvenile court detained the sons from father, released them to the home of their mother, J.O., and ordered monitored visitation with father three times a week for three hours per visit.

On July 20, 2021, the juvenile court held an adjudication hearing in the sons' case, but only as to the two counts alleging that father's alcohol and drug abuse rendered him incapable of caring for the sons, and found those allegations to be true.  The

---

[2]    All further statutory references are to the Welfare and Institutions Code.

court ordered the Department to interview the sons regarding the sex abuse allegations of E.G.'s half-siblings and to submit a last minute information with updated recommendations so that the court could adjudicate the remaining counts in the sons' case.

On September 20, 2021, the juvenile court held an adjudication hearing in E.G.'s case, as well as the remaining counts in the petition in the sons' case. The court sustained the allegations in E.G's case. In the sons' case, the juvenile court dismissed count a-1, which alleged that the sons were at risk of serious physical harm inflicted nonaccidentally due to father's domestic abuse of mother, as well as the counts alleging that the sons were at risk of harm from father's sexual abuse of Y.F., Ja.F., and Ju.F. The court sustained count b-1, alleging that father's domestic violence against mother in E.G.'s presence placed the sons at risk of harm and that his conduct of driving with E.G. while he consumed alcohol endangered the sons.

At the October 20, 2021, disposition hearing in E.G.'s case, the juvenile court removed her from father and placed her with mother. The court denied father visitation and reunification services pursuant to section 361.5, subdivision (b)(6).

That same day, the juvenile court held a disposition hearing in the sons' case, removed them from father, and released them to J.O. The court ordered father to complete a full alcohol/drug treatment program with aftercare, participate in a 12-step program, and submit to random or on demand drug/alcohol testing. The court also ordered father to attend parenting classes, sex abuse counseling, and individual therapy to address case issues, substance abuse, and sex abuse and granted father monitored visitation three times a week for three hours per visit.

5

On December 2, 2021, the juvenile court entered a permanent restraining order against father that prohibited him from having any contact with mother, Ja.F., Y.F., Ju.F. or E.G.

C.    *Six-Month Review Hearing, Termination of Jurisdiction, and Exit Orders*

In a March 2022 status review report, the Department advised that the sons continued to live with the paternal grandmother and that J.O. had overnight visitation with them on weekends.  According to the social worker, father had a stable job, a home, and continued "to live sober . . . ."  But, as of the time of the report, father had not completed any of the court ordered programs or contacted the service-provider referrals from the social worker.  In addition, although father had "partially complied" with court-ordered drug and alcohol testing by providing several negative test results, he also had multiple no shows.  Father visited regularly with the sons in a monitored setting at paternal grandmother's home, and there were no reported concerns about those visits during the review period.  Because father had made "minimum progress" in complying with his case plan, the Department recommended termination of jurisdiction, with orders granting J.O. sole legal and physical custody of the sons and father continued monitored visitation.

In the six-month status review report in E.G.'s case, the Department advised that E.G. and her half-siblings were living with mother in the home of mother's sister and doing well.  Mother told the social worker that she had reported father's sexual abuse of her older daughters to the District Attorney's

office, but investigators had decided there was insufficient evidence to charge father.

At the April 19, 2022, six-month review hearing in E.G.'s case, the juvenile court stated that it intended to terminate jurisdiction proceedings. Father's counsel requested joint legal and physical custody of E.G. or, in the alternative, unmonitored visitation and sibling visitation between E.G. and the sons. The Department argued that father had not been in contact during the review period and had not complied with his case plan in the sons' case, there had been no change in circumstance during the review period to warrant deviation from the current no visitation order, and there was a three-year protective order in place prohibiting contact between E.G. and father. The court terminated jurisdiction as to E.G. and granted mother sole legal and physical custody, with no visitation for father.

At the six-month hearing in the sons' case, the juvenile court stated it intended to terminate jurisdiction. Father's counsel requested joint custody or, in the alternative, unmonitored visitation. Counsel for the sons objected to unmonitored visits based on father's lack of compliance with his case plan. The Department also objected to unmonitored visits and joint custody. The court ruled that, due to father's noncompliance with his case plan, there was no factual basis upon which to grant joint custody or change the current monitored visitation order. It therefore granted J.O. sole legal and physical custody of the sons.

Father timely appealed from the exit orders in both cases, and his appeals were consolidated for briefing, argument, and decision.

## III.  DISCUSSION

### A.  *Applicable Law and Standard of Review*

A juvenile court has a special responsibility to a child as *parens patriae* and must look to the totality of the child's circumstances when making decisions regarding the child.  (*In re Chantel S.* (1996) 13 Cal.4th 196, 201.)  When a juvenile court terminates jurisdiction over a dependent child, it may issue custody and visitation orders.  (§ 362.4, subd. (a); *In re T.S.* (2020) 52 Cal.App.5th 503, 513, fn. omitted ["[S]ection 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') . . ."].)  In making exit orders, a juvenile court must look at the best interests of the child.  (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)

We review a juvenile court's exit orders for an abuse of discretion.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)  """The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"  [Citations.]"  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

### B.  *Analysis*

#### 1.  Custody and Visitation Orders re:  the Sons

Father argues that, prior to the filing of the petition in the sons' case, he had joint custody of the sons as their primary caretaker, there had been no evidence of abuse or neglect during

8

that time, and, during the review period, he had maintained regular visitation with them without any reported concerns. He therefore contends there was insufficient evidence to support the need for the monitored visitation restriction or the custody modification giving sole legal custody to J.O. We disagree.

Father's argument ignores the juvenile court's unchallenged findings that he was a current abuser of alcohol and marijuana; he had been under the influence of alcohol in the home while E.G. was present; and, on one occasion, he had driven with E.G. while consuming alcohol. Those findings, in turn, supported the court's unchallenged conclusions at disposition that father's substance abuse posed a danger to the sons and therefore monitored visitation and court-ordered programs to address substance abuse were warranted.

During the ensuing six-month review period, father failed to enroll in any of the court-ordered services for substance abuse and was a no show for several random drug and alcohol tests. That there were no reported concerns about father's monitored visits with the sons did not demonstrate that unmonitored visits would be in the sons' best interests. On this record, we decline to find that the juvenile court abused its discretion in granting J.O. sole legal custody or requiring that father's visitation with the sons be monitored.

2. Visitation Order re: E.G.

Father also maintains that the exit order prohibiting visitation with E.G. "was an abuse of discretion because insufficient evidence supported ending father's relationship with his daughter and monitored visitation could have addressed any

9

safety concerns." According to father, prior to the filing of the petition in E.G.'s case, he had weekend visits with E.G. without any safety concerns and the evidence showed he had "a positive and loving relationship" with her.

Father's argument again ignores the unchallenged findings that he was a current abuser of alcohol and marijuana who had endangered E.G. by being intoxicated in the home and driving with her while consuming alcohol; had physically abused mother while in the proximity of E.G. and her sisters; and had sexually abused E.G.'s sisters while E.G. was in the home. Those findings supported the juvenile court's unchallenged conclusion at disposition that the risk of detriment to E.G. posed by father's conduct warranted a permanent restraining order prohibiting all contact with her. On this record, father has failed to demonstrate that the court's exit order was not in E.G.'s best interest. Accordingly, we conclude the court did not abuse its discretion by, in effect, continuing in place the orders prohibiting father from having contact with E.G.

## IV.   DISPOSITION

The challenged custody and visitation exit orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



KIM, J.


We concur:



RUBIN, P. J.



MOOR, J.


11